1UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **BETTY DIANE CARROLL,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 4:21-cv-00327 |
| § | | |
| **C-CON SERVICES, INC.,** and § | | |
| **EARL B. COTTON,** § | | |
| Defendants. § | | |

**DEFENDANTS' BRIEF AND RESPONSE OPPOSING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

TO THE HONORABLE JUDGE OF SAID COURT:

**COME NOW** Defendants C-Con Services, Inc. and Earl B. Cotton (collectively, "Defendants") and file this, their Response to Plaintiff's Motion for an award of Attorneys' Fees and Costs (hereinafter, Plaintiff's "Motion," and Defendants' "Response") and in support of same, would show the Court as follows:

**I.**

**STATEMENT OF THE ISSUE**

1. At the conclusion of a five day jury trial, Plaintiff asked for damages in an amount of $42,816.02 for overtime damages, $85,400.00 for back pay damages, $158,266.00 for front pay damages, and an assessment of liquidated damages. After more than a full day of deliberation, the jury only awarded Plaintiff $4,848.00 for back pay and the amount of $139.99 in overtime damages. In other words, although Plaintiff claimed that she "proved" more than $286,482.02 in unpaid wage claims, the jury only saw fit to award a total of $4,987.99.

2. Plaintiff was awarded, at best, less than 2% of the damages she sought. In other words, Plaintiff *lost* at least 98% of her case. Nevertheless, her attorneys have filed a motion asking

the Court to award an amount of $152,955.00 in attorneys' fees, which is more than ***1000 times*** the amount of liquidated damages and would be an unpermitted windfall to Plaintiff and her attorneys. *See Farrar v. Hobby,* 506 U.S. 103, 115 (1992) ("[c]ases [such as this] were never intended to 'produce windfalls for attorneys'").

## II.

## THE COURT SHOULD DENY PLAINTIFF'S ATTORNEYS' FEE REQUEST

### A. PLAINTIFF FAILED TO PROVE THE EXORBITANT AMOUNT OF DAMAGES CLAIMED

3. This Court should not award the fees Plaintiff's counsel requested because they allowed this matter to go to trial, knowing that Plaintiff's overtime claim was not supported by the evidence and documents produced during discovery. During trial, Plaintiff testified to several years of unpaid overtime, in direct contradiction to the documentary evidence admitted at trial. The jury chose to give weight to those documents (many of which had been signed by Plaintiff) and disregard Plaintiff's testimony, in finding that she was only entitled to one week's worth of overtime. Despite the jury's well reasoned verdict, Plaintiff filed two, separate post-trial motions seeking additur, new trial, or judgment as a matter of law. (See Dkt. #72 and Dkt. #73) The Court entered a Memorandum Opinion and Order, ultimately confirming the award of the jury. (Dkt. #78)

4. The Complaint alleged Plaintiff was damaged by Defendants' purported failure to pay her overtime allegedly earned over the course of several years. She claimed that she worked between 2.5-5 hours of overtime per week over a five year period. However, no plausible analysis of the documentary evidence (particularly when considered that Plaintiff failed to prove that said documents were inaccurate) could result in any finding that Plaintiff had worked any overtime hours. The documents showed that Plaintiff worked only 40 hours/week except for ***one week*** in 2021. Plaintiff chose to go to trial trying to discredit the very credible and understandable documents with

her testimony which was neither credible nor clear. The unanimous jury obviously chose to rely on the documents and not the testimony in reaching its verdict.

5.   Thereafter, the Court declined to disturb the jury award, stating that "a reasonable jury could easily conclude that Carroll failed to prove by a preponderance of evidence that she is entitled to the substantial sums of overtime she now demands." (Dkt. #78, p. 13)

6.   Plaintiff's counsel thus knew, or should have known, that the credible evidence in the case would never support Plaintiff's damage claims. In any event, Plaintiff's counsel should have known that the overtime cause of action was largely dependent on a single timesheet, and that the claim for retaliation rested entirely on speculation regarding the timing of Plaintiff's termination for poor performance. In addition, Plaintiff claimed damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, or punitive damages, without any documentary evidence. Plaintiff's counsel should have known that the chances of a jury disregarding the clear and credible documentary evidence in the case and believing the vague, unclear and ambiguous testimony of the Plaintiff, was very slim. In addition, Plaintiff's claim for front pay was submitted to the Court for judgment as a matter of law. The Court considered the evidence presented at trial and the jury's very limited award for back pay. (Dkt. #78, p. 20) The Court denied Plaintiff's request for front pay.

    **B.   PLAINTIFF'S RETALIATION CLAIM WAS THINLY SUPPORTED**

7.   Plaintiff claimed that her termination was in retaliation for her sudden request for overtime pay. Defendants presented the jury with documentary evidence and witness testimony supporting its defense that Plaintiff was terminated for cause.

8.   The jury's award of four weeks of pay is evidence of a compromise of the two positions. As the Court notes in its Memorandum Opinion and Order, the jury could have based its award on Plaintiff's evidence of her weekly salary for the period between when she was actually

terminated and the end of the probationary period, when she absolutely would have been terminated for performance issues. (Dkt. #78, p. 15).

        C.    PLAINTIFF SHOULD NOT HAVE PROCEEDED TO TRIAL

9.    Knowing that there was a severe lack of credible evidence to support the large amount of damages Plaintiff was claiming, Plaintiff's counsel should have never proceeded to trial. In fact, during the discovery phase and during and even after mediation, there were multiple communications between the parties regarding settlement. At one point Plaintiff demanded $75,000, and then thereafter that figure increased during mediation and up to trial. Plaintiff and Plaintiff's counsel's misreading of the strength of her claims should not be rewarded with a large attorneys' fees award, especially since there were opportunities to agree to a reasonable settlement well before trial and before the great majority of the fees were incurred.

10.    In fact, by the time mediation occurred, the evidence and the testimony in the case were fairly settled, thereafter Plaintiff did not seek any other depositions or other evidence that might bolster her case. Instead, Plaintiff went to trial without any compelling evidence to justify her damage claims, and of course received a jury award that should have been expected. In fact, the jury award was probably about as good as any she could have ever received. Knowing this, Plaintiff's insistence on proceeding to trial for an award of less than $5,000 should not now entitle her to a windfall award of attorneys' fees in the amount of $152,955.00.

        D.    CONCLUSION ON "NO FEES AT ALL"

11.    Defendants are asking the Court to either severely reduce any attorneys fees awarded or to outright deny any award for attorneys fees in this case. The court may use its "equitable discretion" to determine a reasonable fee award by eliminating hours related to unsuccessful or dismissed claims. *Pruett v. Harris County Bail Bond Bd.*, 499 F.3d 403, 418 (5th Cir. 2007); *see Johnson v. Big Lots Stores*, 639 F.Supp.2d 696, 701 (E.D. La. 2009). Special circumstances

justifying the denial, or steep reduction, of a prevailing plaintiff's fee request, exist where the fee application reflects "(1) no 'good faith' effort to exclude excessive, redundant, or otherwise unnecessary hours, (2) no reduction for time spent on unsuccessful claims, and (3) no allowance for the limited 'degree of success' achieved by the plaintiff" *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-01969, 2010 U.S. Dist. LEXIS 107410, at *18-19 (E.D. La. 2010), citing *Domegan v. Ponte*, 972 F.2d 401, 419 (1st Cir. 1992), vacated and remanded on other grounds, 507 U.S. 956, (1993). "This will be true even when the plaintiff's claims [are] interrelated, nonfrivolous, and raised in good faith." *Eckert v. Hensley,* 461 U.S. 424, 436 (1983).

12. Plaintiff's counsel admits that they worked on a contingent fee basis and accepted the risk associated with this billing practice. Plaintiff was ultimately awarded, at best, only 2% of the damages to which Plaintiff claimed to be entitled. Ultimately, Plaintiff's counsel failed at trial on almost all of Plaintiff's case. It would be unjust to now ask Defendants to fund these efforts.

13. With regard to the last element in particular, Plaintiff's counsel did not properly adjust its fee request to make any allowances for the limited degree of success they experienced in this case. Although the jury's award does technically make Plaintiff a prevailing party, the award is very small, to the point of being de minimus, and it does not overcome the fact that Plaintiff failed entirely with regard to the vast majority of the allegations she made at trial.

14. The special considerations shown above make the extremely strong showing required to show that Defendants should not be compelled to pay any attorney's fee in this case. *Farrar,* 506 U.S. at 105, O'Connor, J. concurring (commenting that the appropriate fee was "no fee at all" where a Plaintiff achieved only a de minimus victory). As stated above, Plaintiff's counsel charged the Plaintiff nothing for their time and agreed only to payment of attorney's fees as a percentage of an amount recovered. As such, the rates per hour that are reflected in counsel's time sheets were never negotiated or charged to Plaintiff. These rates were simply determined after the fact and are

extremely high for counsel in this case. Furthermore, much of the time was completely redundant and unnecessary. For instance, the two attorneys representing Plaintiff charged $450.00/hour each while it was generally only one of them performing the work. During trial, Plaintiff's counsel averaged charging over $10,000.00 each day for the 5 day trial. That amount is both excessive, unnecessary, and redundant.

### III.

### THE JOHNSON FACTORS

15. Defendants' request for a severe reduction in attorney's fees is supported by analysis of the *Johnson* factors, as follows:

#### A. TIME AND LABOR REQUIRED

16. This case involved one Plaintiff, simple causes of action, minimal document production, and an uncomplicated fact pattern. Plaintiff noticed no depositions, and the parties attended one, half-day mediation. Accordingly, this case required less time and labor than most "normal" civil case, and less than most such cases tried on behalf of multiple plaintiffs, multiple causes of action, or complicated fact patterns. This factor weighs in favor of severe reduction.

#### B. NOVELTY AND DIFFICULTY OF THE QUESTIONS

17. No novel or difficult questions were at issue in this case; the fact pattern did not require counsel to consult other bodies of federal employment law for guidance, nor were there any constitutional issues raised. Plaintiff's counsel tacitly acknowledges that her cause of action does not raise any novel or difficult issues. This factor weighs in favor of reduction.

#### C. SKILL REQUIRED TO PERFORM LEGAL SERVICES PROPERLY

18. Plaintiff does not advocate any need for special skill in order to represent Ms. Carroll in this lawsuit. In fact, Plaintiff's counsel are not Board certified and hold no advanced credentials applicable to prosecution of a straight-forward FLSA case. In fact, Plaintiff's counsel was not

experienced, and even admitted in Court to be trying her first federal court lawsuit. As such this weighs in favor of reduction.

### D. PRECLUSION OF OTHER EMPLOYMENT

19. Plaintiff's counsel admits that they did not spend much time on this case during the discovery period, but only ramped up their efforts on the eve of trial; thus, accepting this case could not have precluded other employment. This factor weighs in favor of reduction.

### E. CUSTOMARY FEE IN THE COMMUNITY

20. After determination of a reasonable number of hours for the lodestar, the court "must select an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Shipes II*, 987 F.2d at 319. The court then multiplies the number of compensable hours by the selected hourly rate to produce the lodestar amount. *Id*. Movant bears the burden both to substantiate the requested hours and the hourly rates. *Eckert*, 461 U.S. at 437. Once the lodestar has been determined, the court may adjust it upward or downward, if the *Johnson* factors are not "already considered in calculating the lodestar." *Id.*

21. Plaintiff avers that the fees it seeks to charge are "customary for the Northern District of Texas." Defendants defer to the large body of case law which holds that the Court is expert in determining customary and reasonable fees for legal services in the district of its jurisdiction, and request that the Court consider the following when making its determination of customary fees. The Texas State Bar's 2019 Income and Hourly Rates Survey reported a median hourly rate of $291.[1] Plaintiff's counsel requests a rate of $450, which is significantly higher than the state's average. As discussed previously, Plaintiff's counsel boast no particular credentials or experience to justify a

---

[1] The 2021 Income and Hourly Rates survey published by the Texas Bar Association did not include a report of hourly rates.

higher billing rate. Furthermore, Ms. Bhatti admitted that she was trying her first federal court jury trial (and maybe her first jury trial of any kind). She didn't have the experience to justify a rate even close to the $450.00/hour requested. This factor weighs strongly in favor of reduction.

### F. FIXED OR CONTINGENT FEE

22. Plaintiff's counsel admits they took this case on a contingent fee basis, which encapsulates an inherent amount of risk. Plaintiff now seeks to mitigate its risk by forcing Defendant to pay exorbitant fees. This factor weighs strongly toward reduction.

### G. TIME LIMITATIONS IMPOSED BY THE CLIENT OR CIRCUMSTANCES

23. Plaintiff filed her original petition on March 17, 2021. The parties conducted minimal discovery, attended one deposition, and attended one, half-day mediation, and the case proceeded to trial eighteen months later, on September 12, 2022. The litigation process was cordial, and the parties did not engage in any extraneous motion practice or any discovery disputes. No circumstance of this case justifies large fees; this factor weighs strongly toward reduction.

### H. THE AMOUNT INVOLVED AND THE RESULTS OBTAINED.

24. This is by far the most important of the *Johnson* factors. In *Farrar v. Hobby*, the Supreme Court stated that district courts should give "primary consideration to the amount of damages awarded as compared to the amount sought." 506 U.S. 103, 114 (1992). "This will be true even when the plaintiff's claims [are] interrelated, nonfrivolous, and raised in good faith." Where a plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *Eckert,* 461 U.S. 424, 440.

25. Furthermore, Plaintiff's counsel had every reason to understand that based upon the evidence in the case, the chances of a jury award close to the amount of the claim, was very slim. Nevertheless, from the outset, Plaintiff's counsel booked way more hours than were necessary at rates that were extremely higher than warranted. Knowing that their client would never be

responsible for paying such fees, Plaintiff's counsel overworked and overcharged, and now are hoping to saddle Defendants with this cost.

26. Defendant does not dispute that Plaintiff is a prevailing party. But neither the fact of being a prevailing party, nor the small size of an award, *per se*, have a relation to a trial court's determination of reasonable fees. The critical element of the analysis is the relative degree of success. *Eckert,* 461 U.S. 424, 440. Here, Plaintiff sought money damages in the amount of $286,482.02 plus liquidated damages, but she was awarded only $4,987.99. Thus, Plaintiff's award was, at best, less than 2% of her prayed-for amount. Defendants respectfully ask the Court to consider the facts, law, and arguments above, and to find that this factor weighs strongly in favor of reduction.

### I.    EXPERIENCE, REPUTATION AND ABILITY OF THE ATTORNEYS

27. Neither of Plaintiff's attorneys are known to be board-certified, or to be substantially published, or to have lectured substantially in this area of law. In fact, lead counsel for Plaintiff admitted that this was her first trial appearance. This also argues against awarding said attorneys above the median rate, either for area or expertise.

### J.    "UNDESIRABILITY" OF THIS CASE AND PROFESSIONAL RELATIONSHIP WITH THE CLIENT

28. Nothing about this case makes it "undesirable," and Plaintiff's counsel make no argument for or against. Similarly, Plaintiff's counsel make no comment about the relationship with their client. These factors are neutral.

### K.    AWARDS IN SIMILAR CASES

29. Plaintiff cites several cases where a court awarded attorney's fees to Plaintiffs who received relatively small judgment awards; however, all of these plaintiffs were awarded more than Ms. Carroll, and only one of the attorney's fee awards exceeds that now requested by Plaintiff.

Although precedent exists for attorney's fees awards that are several times higher than damages, none of the cases sited were 1000 times higher than the liquidated damage award, as is the case here. This factor weighs strongly in favor of reduction.

## CONCLUSION AND PRAYER

Based on the facts, law, and arguments set forth above, Defendants ask that the Court deny Plaintiff's Motion for Attorneys' Fees. In the alternative, Defendants request that the Court consider the facts, arguments, and law set forth in this Response, and substantially reduce Plaintiff's lodestar and request for nontaxable costs. Finally, Defendants pray that this Court award them all other relief to which they have shown themselves entitled.

Respectfully submitted,

**CUTLER ▪ SMITH, P.C.**

By: /s/ *Darrell W. Smith*
  Darrell W. Smith
  State Bar No. 18558100
  darrell@cutler-smith.com
  Cynthia Karm
  State Bar No. 24061291
  ckarm@cutler-smith.com
  Park Central 7
  12750 Merit Drive, Suite 500
  Dallas, Texas 75251
  Phone: 214-219-0800
  Fax: 817-219-0854
  ***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service in accordance with the local rules of United States District Court for the Eastern District of Texas this 21st day of June, 2024.

  /s/ *Darrell Smith*
  Cutler-Smith, P.C.